**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JAMES THOMPSON,<br><br>          Plaintiff,<br><br>    v.<br><br>KAREN CRAWFORD, KELLY PASHOLK,<br>SCOTT RISOLUTE, AISHA WILLIAMS,<br>DELRICE ADAMS, BILL DYKSTRA,<br>VINCENT ONG, and CROWE LLP,<br><br>          Defendants. | Case No. 25-cv-10073<br><br>District Judge Jeremy C. Daniel<br><br>Magistrate Judge Beth W. Jantz |

**CROWE LLP'S REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Defendant Crowe LLP ("Crowe"), through its undersigned counsel, respectfully submits this reply in support of its Rule 12(b)(6) motion to dismiss (Dkt. 9).

**INTRODUCTION**

All of Thompson's claims against Crowe boil down to his disagreement with Crowe's observation that certain expenses of a state grant recipient named Professional Litigant, Inc. ("PLI") were "questioned." As explained in Crowe's motion, however, merely questioning the expenses of a state grant recipient does not give rise to any cause of action. (Dkt. 9.)

Thompson's primary response is that his status as a *pro se* litigant is "controlling." (Dkt. 23 at 2.) While Thompson's status as a *pro se* litigant may require a liberal construction of his Complaint, it is not "controlling." Even a liberal construction cannot cure every defect in his pleading, *Radcliffe v. Dunigan*, No. 85 C 5369, 1985 WL 1870, at *1 (N.D. Ill. June 26, 1985), or exempt Thompson from the Federal Rules of Civil Procedure, *Sniadecki v. St. Joseph County Public Library*, No. 3:25-CV-804 DRL, 2025 WL 2996376, at *1 (N.D. Ind. Oct. 23, 2025). *Pro se* litigants are not excused from basic pleading requirements. *Sabrina v. Cap. One Fin. Corp.*, No.

23-CV-2798-SMY, 2025 WL 930513, at *1 (S.D. Ill. Mar. 27, 2025). Thus, while "the Court must construe *pro se* complaints liberally, conclusory statements do not suffice to state a claim." *Fleming v. Serenity Home Healthcare*, No. 24 CV 9514, 2025 WL 2495916, at *2 (N.D. Ill. Aug. 29, 2025) (citation omitted). Thompson was recently reminded of this principle. *See Thompson v. Westlake Services, LLC*, No. 1:25-cv-03080, 2025 WL 2916992, at * 3 (N.D. Ill. Oct. 14, 2025) ("a *pro se* complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief") (granting motion to dismiss one of Thompson's complaints).

## ARGUMENT

**I.  Thompson's 42 U.S.C. § 1983 claims (Counts I-IV) should be dismissed because Crowe is not a state actor.**

As explained in Crowe's motion to dismiss (Dkt. 9 at 2-4), Thompson's § 1983 claims against Crowe in Counts I-IV fail because Crowe is not a state actor. It is an accounting firm that performed a review of a grant program under a contract with a state agency. (Dkt. 1, ¶ 17.) Even assuming the truth of Thompson's allegations, Crowe exercised no right or privilege created by the state, played no role in any administrative hearing involving PLI, and had no authority to decide whether PLI would lose grant funds. At most, Thompson alleges that Crowe provided information that ICJIA later considered in making its own grant decisions. (*See, e.g.*, Dkt. 1, ¶¶ 27, 36-38, 46.) That does not make Crowe a state actor. *See McGillicuddy v. Clements*, 746 F.2d 76, 77 (1st Cir. 1984) (a private accounting firm "did not become a state actor for purposes of § 1983 simply because it was performing an audit for a state agency"); *Middleton v. Lewis*, No. 2:19-CV-00110, 2020 WL 1877909, at *5 (E.D. Ky. Apr. 15, 2020) (dismissing § 1983 claim against private company that performed an audit for a state government because the auditor was not a state actor).

Thompson argues that this case is different because of his "allegations of conspiracy or state direction." (Dkt. 23 at 3.) He says that Crowe's "direct role in the joint scheme" is

2

"demonstrat[ed]" by his allegation "that Crowe's audit report personally implicated Plaintiff by identifying him as the 'Program Director' and alleging improper transfers to him." (*Id.*, *citing* Dkt. 1, ¶ 2.) Paragraph 2 of the Complaint says no such thing, and the report itself shows that Crowe never named Thompson as the "Program Director" and never said that Thompson made "improper transfers." (Dkt. 9, Ex. A to Ex. 1 (Crowe's report); *see also* Dkt. 9 at 9 n.1 (Court may consider Crowe's report in connection with Crowe's Rule 12(b)(6) motion).)

Thompson also claims to have alleged that Crowe's observations about grant usage by PLI were "fabricated," "false" and contrary to "documentation." (Dkt. 23 at 3.) He also seems to argue that Crowe failed to comply with audit standards. (*Id.*) His disagreement with Crowe's observations and his criticism of its work, however, does not mean that Crowe was a state actor. *See McGillicuddy*, 746 F.2d at 77-78 (allegations of "an incomplete or improper audit" that produced a report containing "false, inaccurate, or misleading information" do not suggest that an auditor "was acting in a conspiracy with state officials to deprive the plaintiff of civil rights"). Thompson seems to argue that Crowe's work failed to comply with requirements imposed by State law. (Dkt. 23 at 3.) If true, however, those allegations would show that "the audit was performed independently from state influence." *Middleton*, 2020 WL 1877909, at * 5.

Thompson argues that a state agency "used" Crowe's work product "to freeze funds and block awards." (Dkt. 23 at 3.) But he never alleges that Crowe ever had any control over funding or awarding state grants. At most, he alleges that a State actor used Crowe's work product. That does not transform Crowe into a state actor. *See McGillicuddy*, 746 F.2d at 77-78 (auditor who presented a report to a State legislative committee was not adequately alleged to be a state actor). Similarly, Thompson vaguely refers to a "joint use of false findings." (Dkt. 23 at 3.) But he never alleges that Crowe ever "use[d]" its own findings to do anything. His allegations are clear that the

3

State defendants, not Crowe, made decisions about whether to award and fund State grants. (*See*, *e.g.*, Dkt. 1 at ¶¶ 3, 19-21, 40-41, 46, 48.) He also complains that Crowe's review was "unscheduled" and not "routine" (Dkt. 23 at 3), but he never explains what he means by those characterizations or offers any factual allegations to show that the review was not "routine." His use of pejorative adjectives to describe Crowe's work, or his speculation about the motivations of others, are not factual allegations that can "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Thompson's remaining arguments merely restate his bare conclusion that Crowe engaged in a conspiracy with the State defendants. (Dkt. 23 at 3.) It is well established that "a bare allegation of a conspiracy between private and state entities is insufficient to bring the private entity within the scope of § 1983." *Messman v. Helmke*, 133 F.3d 1042, 1045 (7th Cir. 1998).

The cases cited by Thompson are inapposite. (Dkt. 23 at 3.) *Dennis v. Sparks*, 449 U.S. 24, 27-32 (1980) held that private parties who bribed a judge were acting under color of state law and did not enjoy any protection from liability by virtue of the judge's immunity. *Dennis* did not address whether the plaintiff's allegations met the pleading standard under Fed. R. Civ. P. 8, and in any event, *Dennis* long predates *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *West v. Atkins*, 487 U.S. 42, 48-58 (1988), a doctor who treated prisoners was deemed a state actor, notwithstanding that he was a contractor and not a state employee, because the State had "delegated" one of its functions to him. Here, Thompson offers no factual allegations showing that the State delegated any of its functions to Crowe, nor can he. *See Middleton*, 2020 WL 1877909, at * 5 (private company that audited underperforming schools for the state was not a state actor because, among other reasons, auditing underperforming schools is not a duty within "the exclusive prerogative of the state"). Finally, *Filarsky v. Delia*, 566

4

U.S. 377, 383-94 (2012) addressed the scope of qualified immunity and did not decide whether someone was a state actor for purposes of § 1983 liability.

## II. Thompson's due process claims (Counts II-III) fail for additional reasons.

As explained in Crowe's motion to dismiss (Dkt. 9 at 4-5), Thompson's due process claims against Crowe (Counts II-III) fail for two additional reasons.

First, Thompson fails to allege the deprivation of a protected interest. Thompson attempts to plead a "stigma-plus" procedural due process claim. (Dkt. 23 at 3.) "Simply alleging defamatory statements that harm one's reputation is insufficient" to state such claim. *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 736 (N.D. Ill. 2014). A plaintiff must allege not merely a stigma but also the "plus"— which is an alteration in one's status, such as formal exclusion or at least broad preclusion from one's chosen trade or profession. *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643-45 (D.C. Cir. 2003); *see also Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (the stigmatizing conduct must make it "virtually impossible for the [plaintiff] to find new employment in his chosen field"). Reduced economic returns or diminished prestige are not enough to meet this standard. *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985). Even a serious impairment of one's future employment is not enough. *Khan v. Bland*, 630 F.3d 519, 534 (7th Cir. 2010).

Thompson does not and cannot meet that demanding standard. He does not allege that Crowe's observations about the use of grant funds rendered him unable to pursue work in his chosen occupation. He argues that he has been "blacklist[ed]" (Dkt. 23 at 3), but his Complaint alleges only that ICJIA "has *moved to* put Plaintiff on the statewide Stop Payment List." (Dkt. 1, ¶ 49 (emphasis added).) Thompson does not allege that ICJIA actually placed his name on such a list. He makes only the vague allegation that ICJIA "moved to" do that. (Dkt. 1, ¶ 49.) Even if that could somehow amount to a blacklisting, it has not yet occurred. Moreover, as a matter of law,

Thompson cannot be placed on that list. It is limited to "awardee[s]." *See* 44 Ill. Adm. Code 7000.260. Thompson was not the awardee here. PLI was the awardee. (Dkt. 1, ¶ 9.)

In addition, while Thompson refers to inclusion on such a list as a "career-ending" event (Dkt. 1, ¶ 49), he fails to adequately allege that he has any "career" at stake here. His Complaint describes PLI's participation in one grant program administered by ICJIA. Thompson alleges no facts to support the broad conclusion that he has a "career" of "managing community grants and programs." (Dkt. 1, ¶ 49.) He also makes no factual allegations showing that he can never again manage any community program. *See Townsend*, 256 F.3d at 672 (no deprivation of occupational liberty interest where plaintiff remained free to seek comparable employment elsewhere). More fundamentally, Thompson offers no allegation that he is precluded from his only verifiable career—which appears to be filing *pro se* lawsuits.[1]

Thompson argues that Crowe's report "accused Plaintiff personally (as 'Program Director')" of fraud and misuse," and that the report "identif[ied] him as the 'Program Director' and alleg[ed] improper transfers to him." (Dkt. 23 at 3-4.) That is not true. Crowe's report contained no such statements. It did not name Thompson as the "Program Director," did not say that he committed fraud or misuse, and did not call any transfers "improper." (Dkt. 9, Ex. A to Ex. 1.) The Crowe report is repeatedly referenced throughout the Complaint (Dkt. 9 at 9 n.1), so it should be considered part of the Complaint and it controls over any contrary allegations. "[D]ocuments that are referred to in [a] complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint," and "[w]here the document

---

[1] In this judicial district alone, Thompson has filed at least 8 other *pro se* lawsuits since 2016: (1) 3:16-cv-50269; (2) 1:17-cv-00089; (3) 17-cv-09042; (4) 1:19-cv-07841; (5) 1:20-cv-00057; (6) 1:20-cv-02583; (7) 1:25-cv-03080; and (8) 1:25-cv-11968. Again, his company's name is Professional Litigant, Inc. (Dkt. 1, ¶ 9.)

6

may properly be considered, . . . the actual document will override inconsistent descriptions of the document alleged in the body of the complaint." *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 852 (N.D. Ill. 2004).

Even if Crowe's report had said such things, that still would not give Thompson a cause of action. Mere defamation or harm to one's reputation is not a deprivation of a protected liberty interest. *Cunliffe*, 51 F. Supp. 3d at 736. Thompson cites *Trifax*, which holds that a plaintiff did *not* have a viable "stigma plus" procedural due process claim. *See* 314 F.3d at 643-45. The same is true here.

Thompson claims to have alleged a "property interest" insofar as he alleged that "awarded grants" were "subsequently frozen." (Dkt. 23 at 4.) But those grants were awarded to PLI, not Thompson. (Dkt. 1, ¶ 9.) Even assuming for the sake of argument that a grantee has a property interest in State grant funds, such an interest would belong to PLI, not Thompson.

Second, for purposes of his substantive due process claim, Thompson fails to allege any conduct by Crowe that could plausibly be characterized as arbitrary, irrational, or conscience-shocking. (Dkt. 9 at 5.) In response, he cites *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019), which affirmed the dismissal of a substantive due process claim. Thompson does not explain why he believes *Campos* supports any of his arguments. He then asserts that "the deliberate fabrication of escalating figures from unchanging records shocks the conscience in the context of a retaliatory audit that violated mandatory auditing standards." (Dkt. 23 at 4.) However, he cites no authority for that proposition. Again, Crowe's report merely stated that certain PLI costs were "questioned." (Dkt. 9 at 9.) "[M]ere persistent questioning" does not "trigger substantive due process concerns," *Sanders v. Splittorff*, No. 17-CV-864-JPG, 2024 WL 3470892, at *3 (S.D. Ill. July 19, 2024), even when that questioning is "unpalatable" and directed at a child, *Jain v. Butler*

*School District 53*, 303 F. Supp. 3d 672, 683 (N.D. Ill. 2018).

### III. Thompson's 42 U.S.C. §§ 1985 and 1986 claims (Counts V-VI) fail on their face.

Counts V-VI, Thompson's civil conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986, fail as a matter of law. A § 1985 claim requires an allegation of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (citation omitted), and Thompson admits that he is a "class of one." (Dkt. 1, ¶ 77.) His § 1986 claim is derivative of his § 1985 and therefore also fails. *See Hicks v. Resolution Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992) (affirming dismissal of § 1986 claim because, "in the absence of a viable claim under § 1985(3), a § 1986 claim cannot exist.").

In response, Thompson cites *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). (Dkt. 23 at 4.) That case had nothing to do with §§ 1985 or 1986. *Id*. Thompson also asserts that his "claims are not merely derivative" because Crowe's audit report "identified Plaintiff as Program Director receiving transfers." (Dkt. 23 at 4.) That is a *non sequitur*. Thompson cites no legal authority connecting that assertion with any of the defects in Counts V or VI. Also, Crowe's report did not name Thompson as the Program Director. (Dkt. 9, Ex. A to Ex. 1.)

### IV. Thompson's RICO and RICO conspiracy claims (Counts VII-VIII) fail to plausibly allege a cause of action.

For multiple reasons, Thompson fails to state a RICO claim or a RICO conspiracy claim against Crowe in Counts VII-VIII. (Dkt. 9 at 6-8.)

First, if "an outside accounting firm that had only a contractual relationship with the allegedly corrupt enterprise—it audited the books and issued financial reports, but neither controlled the enterprise nor participated in either its operation or management—RICO liability [does] not attach." *United States v. Houlihan*, 92 F.3d 1271, 1298 (1st Cir. 1996) (*discussing Reves v. Ernst & Young*, 507 U.S. 170, 179-86 (1993)). (*See also* Dkt. 9 at 6-7 (collecting cases).) In

8

response, Thompson asserts that "Crowe fabricated escalating costs and transmitted false findings via mail and email." (Dkt. 23 at 4.) That is just a pejorative description of Crowe's accounting work. Thompson also asserts yet again that Crowe's report "identified Plaintiff as Program Director receiving transfers." (Dkt. 23 at 4, *citing* Dkt. 1 at ¶ 2.) Again, Crowe's report never said that Thompson was PLI's Program Director. (Dkt. 9, Ex. A to Ex. 1.) Even if the report *had* named Thompson, moreover, he still would be complaining about a report issued by an accounting firm— which, again, is not enough for RICO liability to attach (Dkt. 9 at 6-8), no matter how many pejorative adverbs or adjectives Thomspon uses to express his outrage at the report.

Thompson also cites one of the cases cited by Crowe, *James Streibich Revocable Tr. of 2002 v. Flagstad*, No. 20 CV 2242, 2021 WL 1546439, at *3 (N.D. Ill. Apr. 20, 2021), for the proposition that auditors may face RICO liability "when they go beyond routine duties and direct fraudulent conduct." (Dkt. 23 at 4.) *Flagstad* does not say that. *See* 2021 WL 1546439, at *3. Even if it did, Thompson fails to allege that Crowe did anything other than review grant spending.

Second, Thompson fails to adequately allege any pattern of racketeering activity. (Dkt. 9 at 7-8.) Thompson responds that his allegations specify "the actors ([Crowe employees] Dykstra and Ong), the false reports, the dates, the means of transmission, and the retaliatory purpose." (Dkt. 23 at 4.) That assertion is not supported by any citation to the Complaint. In fact, the Complaint alleges only that Crowe's report "was sent to Plaintiff by mail and/or email" and that "Defendants likely engaged in additional mail or wire communications[.]" (Dkt. 1, ¶¶ 90, 92.) Thompson never alleges who sent the report, when, or how. He alleges that Dykstra and Ong "prepared" the report, but he never identifies anyone who mailed or emailed it to anyone else. (Dkt. 1, ¶ 90.) This is not enough to allege any pattern of racketeering activity. *Shiman v. Paradigm Venture Inv'rs, L.L.C.*, No. 02 C 1320, 2002 WL 1793570, at *1-2 (N.D. Ill. Aug. 5, 2002) (dismissing a § 1962(c) claim

where the plaintiff merely asserted that the defendants' fraudulent scheme was "facilitated by use of the United States mails and wires"); *Thompson*, 2025 WL 2916992, at * 10 (dismissing James Thompson's RICO claim against another defendant because he "still fails to allege with particularity the who, what, when, where, and how of the purported fraudulent conduct").

Third, because a RICO conspiracy claim can only exist where there is a viable RICO claim, Thompson's conspiracy claim under 18 U.S.C. § 1962(d) also fails and should be dismissed. (Dkt. 9 at 8.) Thompson does not dispute that, if his RICO claim is dismissed, his RICO conspiracy claim also should be dismissed. (Dkt. 23 at 4.)

>        **V.    Thompson's defamation *per se* claim (Count IX) fails because Crowe's report contains no false statements of fact about him.**

Crowe's motion to dismiss explained that Thompson's defamation *per se* claim (Count IX) should be dismissed for multiple reasons.

First, Crowe's report said nothing about Thompson. (Dkt. 9 at 8-10.) The Complaint fabricates statements that appear nowhere in the report. (*Id.*) At least one of those alleged statements is misleadingly placed within quotation marks in the Complaint (Dkt. 1, ¶ 105), but those words appear nowhere in the report. (Dkt. 9, Ex. A to Ex. 1.) In response, Thompson does not deny fabricating statements and falsely attributing them to Crowe. (Dkt. 23 at 5.) He therefore has forfeited any argument on that subject. *See Thompson*, 2025 WL 2916992, at * 4 (Thompson forfeited any opposition to a defendant's argument by failing to respond to it).

Instead, Thompson doubles down on his fabrications. He argues: "The Complaint alleges that Crowe's audit report expressly linked Plaintiff to PLI as 'Program Director' and accused him by implication of fraud and misuse through 'questioned costs' of $479,054.36." (Dkt. 23 at 5, *citing* Dkt. 1, ¶ 2.) In fact, (a) no such allegations appear in paragraph 2 of the Complaint (Dkt. 1, ¶ 2), (b) Crowe's report never said that Thompson was the Program Director (Dkt. 9, Ex. A to Ex. 1),

10

and (c) nothing about the phrase "questioned costs" says or fairly implies fraud or misuse—Crowe said only that it had questions (*id*.). Again, because it is repeatedly referenced throughout the Complaint, the report prevails over any contrary allegations in the Complaint's body. *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 852. Thompson cites *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (Ill. 2006), a case in which the defendant accused the plaintiff of bribery. Crowe, however, never accused Thompson of bribery or anything comparable. (Dkt. 9, Ex. A to Ex. 1.)

Second, whether costs could be "questioned" is a statement of opinion and therefore is not defamatory. (Dkt. 9 at 10.) In response, Thompson asserts that statements imputing crimes or a lack of integrity in one's profession are not opinions. (Dkt. 23 at 5.) But Crowe's report never accused Thompson of any crime or of lacking integrity. (Dkt. 9, Ex. A to Ex. 1.)

Third, any of Crowe's actual statements are at least subject to an innocent construction. (Dkt. 9 at 10.) Thompon's response is limited to asserting that "no innocent construction is possible given the retaliatory context," without citing any legal authority. (Dkt. 23 at 5.) In fact, the innocent construction rule "employs an objective standard," *Jones v. Sabis Educational Systems, Inc*., No. 98 C 4252, 1999 WL 1206955, at *5 (N.D. Ill. Dec. 13, 1999), which asks how a reasonable reader would understand the statement at issue, *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 569-71 (Ill. App. Ct. 2003). Thompson offers no argument on that subject. He baldly asserts that statements "imputing criminality or lack of integrity in one's profession" cannot be innocently construed. (Dkt. 23 at 5.) Again, the Crowe report said no such thing. (Dkt. 9, Ex. A to Ex. 1.)

### VI. Thompson's intentional infliction of emotional distress claim (Count X) fails because the conduct alleged is not extreme or outrageous.

Crowe's motion to dismiss explained that Thompson's claim for intentional infliction of emotional distress ("IIED") in Count X fails because (a) Thompson fails to allege that Crowe's conduct was truly extreme or outrageous, and (b) Thomspon fails to allege that Crowe's conduct

caused him severe emotional distress. (Dkt. 9 at 10-11.)

In response, Thompson asserts that "the deliberate fabrication of escalating figures, the withholding of exculpatory evidence, and the retaliatory freezing of all grants in response to protected speech constitute extreme and outrageous conduct in the context of public grant administration." (Dkt. 23 at 5.) In support of that argument, Thompson cites *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016), a case that (a) addressed vicarious liability, not whether the plaintiff adequately pled the elements of an IIED claim, (b) addressed IIED claims in the context of an employer-employee relationship, which is not at issue here, and (c) had nothing to do with public grant administration, accountants, or anything else mentioned by Thompson. *See Boston*, 816 F.3d at 467-68. That case does not support Thompson's argument. Thompson also fails to distinguish any of the other cases cited on this subject in Crowe's motion. (Dkt. 9 at 11.) Moreover, Crowe never had the power to decide whether to freeze any grant funds. That was ICJIA's decision. (Dkt. 1, ¶¶ 27, 36-38, 46.)

Thompson next argues that "extreme anxiety, program loss, and reputation damage" is "sufficiently severe" to adequately allege a cause of action for IIED. (Dkt. 23 at 5.) Again, Crowe did not decide whether grant funding for a program would be lost. That was ICJIA's decision. (Dkt. 1, ¶¶ 27, 36-38, 46.) Also, the grant recipient was PLI, not Thompson (*id.*, ¶ 9), and Crowe's report did not accuse Thompson of anything (Dkt. 9, Ex. A to Ex. 1).

Thompson cites *McKay v. City of Chicago*, 2024 WL 3200299, at * 8 (N.D. Ill. June 28, 2024) (Dkt. 23 at 5), a case that does not appear to exist. If Thompson meant to cite *McKay v. City of Chicago*, No. 21 CV 00577, 2024 WL 3251349, at *12 (N.D. Ill. July 1, 2024), that case dismissed an IIED claim because the plaintiff failed to allege "extreme and outrageous conduct." Moreover, *McKay* added that "everyday job stresses"—such as a retaliatory drug test—are not

12

enough to state an IIED claim. *Id*. at *3, 12. Questions about grant spending are everyday job stresses and do not state a claim for IIED. (Dkt. 9 at 11.)

### VII. Thompson's tortious interference claims (Count XI) fail because he has not alleged that he personally had a contract or a business expectancy.

Crowe's motion to dismiss explains that Thompson's tortious interference claims (Count XI) fail because Thompson fails to allege that he personally had a contract or business expectancy, as PLI (not Thompson) was the grant recipient. (Dkt. 9 at 11-12.) In response, Thompson sows confusion over the grant recipient's identity. (Dkt. 23 at 5.) He asserts that "Exhibits 1A and 1B, addressing Plaintiff personally as recipient of the new award, confirm this personal expectancy" and "distinguish[] personal harm from any derivative corporate injury." (Dkt. 23 at 5.)

In fact, neither of those exhibits says that any grant was awarded to Thompson individually. Exhibit 1A clearly informs the recipient that "*your organization* has been designated" as a grant program participant. (Dkt. 6-1, Ex. 1A (emphasis added).) It plainly does not say that Thompson or any other individual was designated as a participant. Exhibit 1B is a letter from ICJIA to Thompson describing a recommendation that "*Project Maven, Inc* receive $952703 from R3 SFY2025 state funds." (Dkt. 6-1, Ex. 1B (emphasis added).) Again, it does not say that Thompson *individually* was a grant recipient. Thompson offers no other argument and fails to distinguish the cases cited by Crowe. (Dkt. 9 at 11-12.) Instead, he cites *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 154-55 (Ill. 1989), which held that a plaintiff failed to adequately allege a tortious interference claim (*id*. at 154-160). The same is true here.

### VIII. Thompson's abuse of process claim (Count XII) fails because he lacks standing to assert it and has not alleged any acts outside the lawful scope of the proceedings.

Crowe's motion to dismiss explained that Thompson fails to adequately allege abuse of process (Count XII) because he was not a party to the grant compliance proceedings, Crowe played

13

no role in the administrative hearing described in the Complaint, and Thompson alleges no act that was not proper in the regular prosecution of the proceedings. (Dkt. 9 at 12-13.) In response, Thompson hyperbolically argues that the administrative process was "weaponized against" him, but he never disputes that he was not individually a party to that process. (Dkt. 23 at 6.) He also does not identify any allegations that Crowe participated in the administrative hearing. (*Id*.) He argues that someone's "ulterior motive supports a claim for abuse of process," without specifying whether the "motive" belonged to the State defendants or Crowe. (*Id*.) He cites *Holiday Magic, Inc. v. Warren*, 357 F. Supp. 20, 25 (E.D. Wis. 1973), which said nothing about abuse of process and was vacated on appeal. *See Holiday Magic, Inc. v. Warren*, 497 F.2d 687 (7th Cir. 1974). Thompson repeats his claim that Crowe's report "identified Plaintiff as Program Director receiving transfers." (Dkt. 23 at 6.) As discussed repeatedly above, that is untrue. (Dkt. 9, Ex. A to Ex. 1.)

### IX. Thompson's civil conspiracy claim (Count XIII) fails because he alleges no facts showing that Crowe entered, knew of, or participated in any unlawful agreement.

Crowe's motion to dismiss establishes that Thompson failed to adequately allege a civil conspiracy claim in Count XIII. (Dkt. 9 at 13-14.) In response, Thompson generally describes "allegations of coordinated fabrication, joint transmission of false findings, and shared retaliatory intent"—which, he says, "sufficiently infer an agreement." (Dkt. 23 at 6.) He cites no allegations in the Complaint that match this description. In fact, the Complaint alleges that Crowe created a report, and then ICJIA subsequently made a decision about PLI. (Dkt. 1, ¶¶ 25-48.)

Thompson cites *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (Ill. 2004). (Dkt. 23 at 6.) In *Fritz*, the Illinois Supreme Court held that the plaintiff adequately pled a civil conspiracy against two defendants who "allegedly simultaneously came forward with false allegations regarding plaintiff." *See* 209 Ill. 2d at 317-18. Nothing comparable is alleged in the Complaint. (*See*

14

*generally* Dkt. 1.) Meanwhile, in *Fritz*, the Illinois Supreme Court held that the plaintiff failed to adequately allege a conspiracy claim against other defendants, explaining that "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *See* 209 Ill. 2d at 318. Here, Thompson merely repeats the falsehood that "Crowe's audit report identified Plaintiff as Program Director receiving transfers." (Dkt. 23 at 6.) Again, that is untrue. (Dkt. 9, Ex. A to Ex. 1.)

**X.     Thompson lacks standing to assert equitable claims (Count XIV) against Crowe.**

Crowe's motion to dismiss explains that Thompson's request for equitable relief fails because he lacks standing, he fails to satisfy the requirement of redressability, and the equitable relief he seeks would be an unconstitutional prior restraint on speech. (Dkt. 9 at 14-15.) In response, Thompson merely repeats his claim that Crowe's report "identified Plaintiff as Program Director receiving transfers." (Dkt. 23 at 6.) Yet again, that is untrue. (Dkt. 9, Ex. A to Ex. 1.)

WHEREFORE, Crowe LLP respectfully requests that the Court dismiss Plaintiff's complaint against it with prejudice under Fed. R. Civ. P. 12(b)(6).

Dated: January 20, 2026                                    Respectfully submitted,

John M. Fitzgerald (ARDC #6282859)                        Crowe LLP
Jacob B. Berger (ARDC #6318332)
Kyle A. Cooper (ARDC #6320477)          By:     /s/ John M. Fitzgerald
Tabet DiVito & Rothstein LLC                    One of Its Attorneys
209 S. LaSalle St., Suite 700
Chicago, IL 60604
(312) 762-9450
jfitzgerald@tdrlaw.com
jberger@tdrlaw.com
kcooper@tdrlaw.com

15

## CERTIFICATE OF SERVICE

I certify that, on January 20, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties who have filed an appearance in this lawsuit by operation of the Court's electronic filing system. Notice of this filing will also be sent to plaintiff James Thompson by email to thompsonvcrawford@gmail.com. The parties may access this filing through the Court's system.

By:/s/ John M. Fitzgerald
Attorney for Crowe LLP