**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES THOMPSON,
      Plaintiff

      v.

KAREN CRAWFORD, *et al.*,
      Defendants

No. 25 CV 10073

Judge Jeremy C. Daniel

**ORDER**

Defendant Crowe LLP's motion to dismiss [9] is granted in part and denied in part. The motion is granted as to Counts I–VIII and X–XIV. The plaintiff has leave to file an amended complaint on or before April 9, 2026. Defendant Crowe shall answer the operative complaint on or before April 21, 2026.

**STATEMENT**

**<u>Background</u>**

The following facts are taken from the plaintiff's complaint and accepted as true for purposes of resolving the defendants' motions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff James Thompson, *pro se*, is the founder, president, and program director of Professional Litigant, Inc. ("PLI"), an organization participating in Illinois's Restore, Reinvest and Renew ("R3") program, which is administered by Illinois Criminal Justice Information Authority (ICJIA). (R. 1 ¶¶ 9, 17(A).)[1] In 2022, the plaintiff secured an R3 grant from ICJIA. (*Id.* ¶ 17(A).) In 2024, ICJIA's audit unit, led by Defendant Karen Crawford, began reviewing PLI's expenditures and suspended grant payments to PLI during this review, between May and July 2024. (*Id.* ¶ 19.) On June 17, 2024, Crawford issued findings that an amount of the plaintiff's salary was an "unallowable cost." (*Id.* ¶ 21.) The plaintiff made several complaints about this treatment to elected officials, who confirmed they spoke with ICJIA staff about the issue. (*Id.* ¶ 22.)

Weeks later, ICJIA engaged Defendant Crowe LLP ("Crowe") to conduct an audit of PLI's grant. (*Id.* ¶ 25.) According to the complaint, "[t]he pretext used by Crawford to justify a programmatic audit was the very same excessive 'disallowed costs' she had

---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

orchestrated," and the "audit was an attempt to give independent legitimacy by a third party and to distance the Defendants from the complaints made about them." (*Id.* ¶ 26.)

The complaint alleges that Crowe's audit "proceeded in an irregular and hostile manner." (*Id.* ¶ 31.) "[E]ach time [the plaintiff] disproved an allegation, the auditors (working closely with Crawford) would shift to a new theory of mismanagement." (*Id.*) For example, Crowe initially "focused on roughly $230,000 (the disallowed salary)," then later "claimed about $295,000 in 'questioned costs,'" and Crowe's "final report jumped to $479,054.36 in supposed misspent funds." (*Id.*) This, among other things, "riddled [the report] with errors and distortions that consistently painted Plaintiff in the worst possible light." (*Id.*) The plaintiff alleges that Crowe and Crawford were working together based on them already being at scheduled meetings together prior to the plaintiff arriving, Crawford interjecting at these meetings to refute PLI's responses to Crowe's questions, and Crawford raising points at these meetings that later appeared in Crowe's final report. (*Id.* ¶ 33.)

In July 2025, ICJIA sent the plaintiff a Recovery Notice that, "citing Crowe's audit, demanded that Plaintiff repay $479,054.36 and warned that Plaintiff and his organizations would be placed on the State's Stop Payment List if he did not pay or successfully dispute the findings."[2] (*Id.* ¶ 34.) The plaintiff timely objected and was granted a hearing. (*Id.* ¶¶ 35–38.) It was unsuccessful. In August 2025, ICJIA issued a "Notice of Stop Payment Placement for Non-Compliance," which the plaintiff also alleges was retaliation for complaints he made following the hearing. (*Id.* ¶¶ 43–46.)

This lawsuit followed. The plaintiff brings a litany of claims against Crowe and several individuals employed by ICJIA and Crowe. (*See generally id.*) Crowe moves to dismiss the complaint as to it under Fed. R. Civ. P. 12(b)(6). (R. 9.)

## Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint only needs to contain factual allegations that, when accepted as true, sufficiently "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion to dismiss, the Court "must draw all reasonable inferences in the

---

[2] The plaintiff separately filed a number of exhibits, which he refers to in the complaint and describes as "Complaint Exhibits." (R. 6.) The Court considers these documents as part of the complaint. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). The Court notes that the document referenced above states that "the Grantee," which is defined in the document as "Professional Litigant," "is ineligible to receive any additional grant funds" "until these issues are resolved." (R. 6-1 at 146.)

plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court does not extend this presumption to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). *Pro se* complaints are to be construed liberally, but they still must plead facts presenting a plausible claim. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).

<u>Analysis</u>

**Counts I–IV**

Counts I–IV are constitutional claims against all defendants brought under 42 U.S.C. § 1983.[3] (R. 1 ¶¶ 56–75.) Crowe argues these claims against it should be dismissed because Crowe is not a state actor. (R. 9 at 2–3.) A claim under § 1983 must allege "(1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law." *Wilson v. Warren County*, 830 F.3d 464, 468 (7th Cir. 2016). "Private entities and individuals 'cannot ordinarily be held liable under Section 1983 because that statute requires action under color of state law.'" *See Boie v. Credit Acceptance Co.*, No. 25 C 7195, 2026 WL 25050, at *4 (N.D. Ill. Jan. 5, 2026) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000)). However, a private entity may be deemed acting under color of state law where (1) it "conspires with the government to infringe on a plaintiff's rights will be classified as a state actor"; (2) "perform[s] a function that has traditionally been 'the exclusive prerogative of the State'"; or (3) the "private party and the State are interdependent 'to the point of largely overlapping identity.'" *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024) (first quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974), and then quoting *Brentwood Acad. v. Tenn Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 303 (2001)).

According to Crowe, the allegations do not rise to the level of state action "because Crowe is not a state actor" but "an independent accounting firm that performed a review under a contract with a state agency." (R. 9 at 3.) The plaintiff, on the other hand, argues that Crowe may be considered a state actor because the complaint contains "allegations of conspiracy or state direction," *i.e.* that ICJIA "enlisted" Crowe to perform a fraudulent audit. (R. 23 at 3 (citing R. 1 ¶¶ 1–4).) "To get past the pleading stage on this theory, the [plaintiff] must point to more than 'mere allegations of joint action or a conspiracy' to demonstrate that [Crowe] acted under color of state law." *Scott*, 107 F.4th at 758 (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)). "[T]here must have been a real agreement—explicit or implicit—between the parties [to deny the plaintiff of his constitutional rights]," and "[m]erely working in

---

[3] First Amendment Retaliation (Count I), Fourteenth Amendment Procedural Due Process (Count II), Fourteenth Amendment Substantive Due Process (Count III), and Fourteenth Amendment Equal Protection (Count IV).

parallel toward 'a common goal' is not the same as conspiring together." *Id.* (quoting *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980)).

The plaintiff's cited portions of the complaint do not allege a conspiracy beyond stating, "Defendants launched an unscheduled audit of [the plaintiff's] grant by Crowe." (R. 1 ¶ 3.) The complaint does elsewhere allege that Crowe "conspired with ICJIA officials" or was "working closely with Crawford," (*id.* ¶¶ 17, 31), but these are conclusory assertions without factual matter. The complaint also alleges that at meetings between the plaintiff, Crawford, and Crowe, Crowe representatives and Crawford "appeared and had been in the meeting prior to Plaintiff appearing." (*Id.* ¶ 33.) It goes on to state that Crawford would interject to refute the plaintiff's answers to Crowe's questions, even when the plaintiff "receiv[ed] a favorable response from Crowe's team." (*Id.*) Crawford also mentioned in a meeting a deficiency that she said was outside the scope of Crowe's audit, but Crowe's final report mentioned it as a finding. (*Id.*) From this, the complaint alleges that "Crawford was leading the auditors to outcomes she preferred, and Crowe followed." (*Id.*)

These allegations do not support the conclusion that Crowe was operating under color of state law by conspiring with ICJIA. There is little to infer from the fact of Crowe representatives and Crawford showing up to meetings earlier than the plaintiff did. The allegations that Crowe's representatives at times appeared receptive to the plaintiff's explanations and Crawford interjected, and that Crawford, in the plaintiff's presence, mentioned a fact that Crawford later included in its report, also do not support the inference of a conspiracy. At best, these show some amount of parallel conduct without coordination, which is insufficient. The allegations do not add up to a plausible conspiracy between Crowe and ICJIA to deprive the plaintiff of any constitutional rights, and it is well settled in this circuit that even *pro se* plaintiffs must plead facts that support the plausible inference of a conspiracy. *Tarkowski*, 644 F.2d at 1208 ("Although plaintiff is pleading *pro s*e, we believe that even a *pro se* litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a claim."). For this reason, Counts I–IV are dismissed as to Crowe.[4]

## Counts V & VI

Count V is a conspiracy against rights claim under § 1985(3), and Count VI is a claim of neglect to prevent a conspiracy against rights under § 1986.[5] (R. 1 ¶¶ 76–86.) Crowe

---

[4] Crowe make additional arguments for dismissing Counts II and III. The Court need not address these issues because it resolves the motion on Crowe's primary argument.

[5] The complaint states that these two counts are brought "Against Crawford, Pasholk, Risolute, Williams, Adams, Dykstra, [and] Ong." Though the complaint does not affirmatively state that they brought against Crowe, Crowe moves to dismiss these counts as to it, (R. 9 at 5–6), and the plaintiff defends against those arguments, (R. 23 at 4). The Court therefore addresses Crowe's motion to dismiss Counts V and VI as to Crowe.

argues Count V should be dismissed because the plaintiff does not "allege that the alleged conspiracy was motivated by racial or class-based discriminatory animus; indeed, he admits that he is a 'class of one.'" (R. 9 at 6 (quoting R. 1 ¶ 77).) However, the Court dismisses on other grounds. A § 1985(3) conspiracy against rights claim must allege "a conspiracy." *Milchtein v. Milwaukee County*, 42 F.4th 814, 827 (7th Cir. 2022). The Court already concluded that the complaint fails to allege a conspiracy involving Crowe. The Court therefore dismisses Count V as to Crowe. *See Beechler v. Dep't of Child. & Fam. Servs.*, No. 25 C 3163, 2026 WL 502352, at \*2 (C.D. Ill. Feb. 23, 2026) (quoting *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992)) ("*Sua sponte* dismissals for failure to state a claim upon which relief may be granted are permitted, provided a sufficient basis for the court's actions is apparent from the plaintiff's pleading."). And because liability under § 1986 is derivative of liability under § 1985(3), Count VI too is dismissed as to Crowe. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017).

**Counts VII & VIII**

Counts VII and VIII are RICO and RICO conspiracy claims, respectively. (R. 1 ¶¶ 87–102); 18 U.S.C. § 1962(c)–(d). A RICO claim must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). These require, in part, "allegations that a defendant participated in the 'operation or management of the enterprise,' meaning some allegations that defendants 'participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs.'" *In re Tecfidera Antitrust Litig.*, No. 24 C 7387, 2026 WL 222173, at \*11 (N.D. Ill. Jan. 28, 2026) (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646 (7th Cir. 1995)).

Crowe argues the plaintiff's RICO claims against it should be dismissed under the Supreme Court's decision in *Reves v. Ernst & Young*, 507 U.S. 170 (1993), and the cases applying it. *Reves* involved the question of whether an accounting firm must have "participate[d] in the operation or management of the [RICO] enterprise itself to be subject to liability." *Id.* at 172. The Supreme Court concluded it must, and it explained that RICO liability can only attach to parties who have "*some* part in directing the enterprise's affairs," meaning they "participate in the operation or management of the enterprise itself." *Id.* at 179, 185. "[T]he reason the accountants were not liable in *Reves* is that, while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command through which the enterprise's affairs were conducted." *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 978 (7th Cir. 1995) (quoting *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994)).

According to Crowe, the plaintiff "does not and cannot allege that Crowe did anything beyond providing routine professional services to a state agency," and therefore it was

outside the alleged RICO enterprise. (R. 9 at 16.) The plaintiff responds that Crowe went "beyond routine duties and direct[ed] fraudulent conduct" by "fabricat[ing] escalating costs and transmit[ing] false findings" to ICJIA. (R. 23 at 4.) But the plaintiff's response misses the point, which is whether Crowe operated as part of the alleged enterprise with ICJIA. As the Court concluded above, the facts alleged do not support a plausible inference that Crowe conspired with ICJIA. In other words, the complaint fails to plausibly allege that Crowe cooperated with ICJIA in either its decision-making, or that it carried out ICJIA's decisions. Because the complaint does not plausibly allege either a conspiracy or a RICO enterprise that includes Crowe, Counts VII & VIII are dismissed as to Crowe.

**Count IX**

Count IX is a defamation claim.[6] (R. 1 ¶¶ 103–13.) This claim concerns statements made in Crowe's audit report, which "alleged that Plaintiff, through PLI, had mismanaged or misused hundreds of thousands of dollars in grant funds" and "specifically claimed that Plaintiff 'overpaid' himself," and statements repeating this allegation "in internal emails and discussions that were foreseeably repeated externally." (*Id.* ¶¶ 105, 108.)

A defamation claim requires allegations of "sufficient facts showing that (1) the defendant made a false statement about the plaintiff, (2) the defendant made an unprivileged publication of that statement to a third party, and (3) the publication caused damages." *project44, Inc. v. FourKites, Inc.*, 240 N.E.3d 471, 476 (Ill. 2024). Crowe argues the report says nothing about the plaintiff and "merely says that whether certain PLI expenses complied with grant requirements was 'questioned,'" which Crowe further argues is a non-defamatory opinion. (R. 9 at 9–10.) Crowe attached a copy of the report to its motion.[7] (R. 9-1.) The plaintiff responds that the "report expressly linked Plaintiff to PLI as 'Program Director' and accused him by implication of fraud and misuse through 'questioned costs.'" (R. 23 at 5.)

Under Illinois law, allegedly defamatory statements are read neither literally nor in a vacuum. "The court must consider the allegedly defamatory statement in context with the words and the implications therefrom given their natural and obvious meaning." *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 456 (Ill. App. Ct. 2010). Crowe's argument that the report does not reference the plaintiff is unpersuasive. It refers to the "Program Director," which is the plaintiff,

---

[6] The Court notes that even though all the plaintiff's federal claims are dismissed, it continues to exercise supplemental jurisdiction over the plaintiff's remaining state law claim as to Crowe because the federal claims currently stand against other defendants. *See* 28 U.S.C. § 1367(a).

[7] The Court may consider the report because it is mentioned in the plaintiff's complaint and central to his claim. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). The plaintiff also does not argue against the Court considering the report. (*See generally* R. 23.)

and this implies that any statements of fact concerning the Program Director also concern the plaintiff.

Moving to Crowe's second argument, "[w]hether a statement is of an opinion or a fact is a question of law." *Jacobson v. Gimbel*, 986 N.E.2d 1262, 1273 (Ill. App. Ct. 2013). "Generally, where an alleged defamatory statement lacks a specific factual context, the statement is not objectively verifiable and is a nonactionable opinion." *Id.* The complaint alleges that Crowe, in its report, "specifically claimed that Plaintiff 'overpaid' himself by roughly $200,000 beyond his approved salary, that PLI had over $100,000 in other unallowable or unsupported costs, and that various transfers of funds were unaccounted for." (R. 1 ¶ 105.) Count IX does not say anything about the "questioned costs" statement the plaintiff references; rather, it identifies a statement that the plaintiff "overpaid" himself. (*Id.*) The Court cannot locate this statement in Crowe's report. (*See generally* R. 9-1.) However, the Complaint also alleges that the report contains certain factual assertions, such as the costs being "unallowable" based on grant conditions or "unsupported." These are verifiable statements of fact, not statements of opinion. For this reason, Crowe's motion is denied as to Count IX.

**Count X**

Count X is a claim for intentional infliction of emotional distress (IIED). (R. 1 ¶¶ 114–18.) The elements of an IIED claim are "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Bianchi v. McQueen*, 58 N.E.3d 680, 699 (Ill. App. Ct. 2016) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (1992)). Crowe argues the alleged conduct is not "extreme and outrageous" and that the plaintiff's damages allegations "are insufficient to demonstrate 'severe emotional distress.'" (R. 8 at 11.) The Court agrees with Crowe's first argument.

Whether conduct is extreme and outrageous is an objective question, and it is a high bar to clear: "to be considered extreme and outrageous, 'a defendant's conduct must be so extreme as to go beyond all possible bounds of decency' and must be 'regarded as intolerable in a civilized community.'" *See Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80–81 (Ill. 2003)). The plaintiff argues that Crowe's allegedly defamatory statements are extreme and outrageous.[8] (R. 23 at 5.) "As the Seventh Circuit has recognized, Illinois courts have held that a plaintiff cannot prove a claim for intentional infliction of emotional distress based upon a defendant's defamatory statements, because such statements generally do not clear the high hurdle for extreme and outrageous

---

[8] The plaintiff also refers to "the withholding of exculpatory evidence[] and the retaliatory freezing of all grants in response to protected speech" in his argument. (R. 23 at 5). But the complaint alleges that defendants other than Crowe committed these acts. (R. 1 ¶¶ 36, 39, 46, 82.)

conduct." *See Fields v. Jackson*, No. 16 C 1961, 2017 WL 4150682, at \*5 (N.D. Ill. Sept. 19, 2017) (citing *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998)). In light of this observation, Crowe's statements that certain PLI costs or expenses were "unallowed" or "unsupported" are not outrageous and extreme. The claim here is much closer to claims about "the everyday stress of the workplace," which are routinely dismissed. *See Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 868 (Ill. App. Ct. 2000) (dismissing IIED claim based on reassignment and demotion but permitting claim based on an alleged "sham investigation" that involved assertions that the plaintiff "falsified documents, planted radioactive material . . . was a leader of a gang, and other outrageous statements"). Accordingly, Count X is dismissed as to Crowe.

**Count XI**

Count XI is a claim of tortious interference with contract and business expectancy. (R. 1 ¶¶ 119–27.) Both of these torts require, respectively and among other things, "the existence of a valid and enforceable contract between the plaintiff and a third party" and "a reasonable expectancy of entering into a valid business relationship." *State Auto Prop. & Cas. Ins. Co. v. Distinctive Foods, LLC*, 254 N.E.3d 891, 911 (Ill. App. Ct. 2024). Crowe argues that the plaintiff fails to allege these elements because he "has not identified any person or entity with whom he personally, as opposed to PLI, contracted or even contemplated entering a business relationship." (R. 9 at 12.) The plaintiff responds that he, "[a]s founder President, and Program Director of PLI . . . held a personal expectancy in the continued flow of . . . funds and related opportunities," and that several of his exhibits show ICJIA "addressing Plaintiff personally as recipient of the new award." (R. 23 at 5 (citing R. 6-1 at 1–6).)

The Court agrees with Crowe. The complaint alleges that PLI participated in ICJIA's grant program, not the plaintiff. (R. 1 ¶ 9.) The complaint does also allege, "Plaintiff had valid, enforceable contractual relationships with ICJIA," (*id.* ¶ 120), but the plaintiff's supporting documents contradict this statement. (R. 6-1 at 146 (referring to PLI as "the Grantee")); *see Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 802 (7th Cir. 2018) ("[W]ritten exhibits attached to the complaint may trump contradictory allegations."). The documents the plaintiff cites as addressing him personally also make clear that ICJIA's relationship is with "your organization" or use the relevant entity name. (*See id.* at 2, 4.) The only reasonable reading of these documents is that they are addressing the plaintiff in his capacity as an officer of an entity, not in his personal capacity. Though the plaintiff may have some stake in his organization's continued funding, that is not the same as him *personally* contracting or expecting to contract with ICJIA. The complaint and exhibits make clear that his dealings with ICJIA are on behalf of a corporation, and "[i]t is a fundamental principle that a corporation is a legal entity that is separate and distinct from its shareholders, directors, and officers." *Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1090 (Ill. App. Ct. 2009). Count XI is dismissed as to Crowe.

**Count XII**

Count XII is an abuse of process claim. (R. 1 ¶¶ 128–34.) The complaint alleges that the defendants initiated "ICJIA's grant compliance and enforcement proceedings," including the audit process, in order to retaliate against the plaintiff. (*Id.* ¶¶ 129–30.) Crowe argues the plaintiff lacks standing to assert this claim because "[t]he grant compliance proceedings were directed at PLI, the grant recipient, not at [the plaintiff]." (R. 9 at 12.) The Court need not reach the standing argument because, for the same reason Count XI fails and the same reasons Crowe raises here, this claim too fails on the elements. *See Markle v. Drummond Advisors, LLC*, No. 19 C 2789, 2020 WL 777272, at *3 (N.D. Ill. Feb. 18, 2020) (citing *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)) ("[W]here a standing issue remains intertwined with the merits of the case, courts may postpone that [standing] determination until later in the proceedings."). The elements of an abuse of process claim are "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 57 (Ill. App. Ct. 2012). "In order to satisfy the first element, a plaintiff must plead facts that show that *the defendant* instituted proceedings against *him* for an improper purpose." *Id.* (emphasis added). The abuse of process claim fails on this element because, as discussed above, ICJIA's contract and the proceedings brought based on that contract were against PLI, not the plaintiff personally. Further, the complaint alleges that ICJIA contracted Crowe to conduct the audit, not that Crowe itself instituted any proceedings. (R. 1 ¶ 17.) Count XII is dismissed as to Crowe.

**Count XIII**

Count XIII is a civil conspiracy claim. (R. 1 ¶¶ 135–40.) The elements of this claim are "that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508–09 (7th Cir. 2007) (citing *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997)). For the reasons discussed above, this claim is dismissed as to Crowe for failure to allege a plausible conspiracy.

**Count XIV**

Finally, Count XIV is a claim for injunctive relief. (R. 1 ¶¶ 142–53.) Crowe argues that the plaintiff lacks standing to request equitable relief because "[a]ny claim for such relief would belong to PLI, not [the plaintiff]." (R. 9 at 14.) Without deciding what types of relief the plaintiff might be entitled to, the Court dismisses Count XIV. Injunctive relief "is a remedy, not a cause of action, and thus should not be pleaded as a separate count." *Knuston v. Village of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir.

2019). It is proper to dismiss a count alleging "injunctive relief" on this basis. *Id.* Count XIV is therefore dismissed as to Crowe.

Date: March 19, 2026

JEREMY C. DANIEL
United States District Judge